UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DANIEL LECLAIRE, MARIA LECLAIRE, ALFRED
BROOMHEAD, MARYANN BROOMHEAD, KATIE
CALHOUN, FRED COMO, NANCY COMO, TERRI
COTONE, CAROL CYRUS, DUANE CYRUS, EMILY
FLORES, JORGE FLORES, DAVID GEHRS, MARCI
GENTILE, CARMINE GRIPPO, LORI GRIPPO, DAVID
HALM, JOLIE HALM, FRANCES MAHER, DANE MELLON,
MELINDA MELLON, BOB MESTEMAKER, CONNIE
MESTEMAKER, GLENN NELSON, KARALEE NELSON,
ANN ORLANDO, DAVID ORLANDO, CHRISSIE ORMSBEE,
JEFF ORMSBEE, KIMBERLY SHELL, and MATTHEW SHELL,

|  |  |
|---|---|
| | Civil Action No. 1:25-CV-0255 |
| | (AMN/DJS) |
| | **COMPLAINT** |

                                        Plaintiffs,                    JURY TRIAL DEMANDED

                v.

VERTICAL BRIDGE DEVELOPMENT, LLC,
VERTICAL BRIDGE II, LLC, THE TOWN OF BALLSTON,
ERIC CONNOLLY, individually, MICHAEL CAROTA,
individually, CHUCK CURTISS, individually,
ROB FENDRICK, individually, KELLY JASINSKI,
Individually, and CELLCO PARTNERSHIP
d/b/a VERIZON WIRELESS,

                                        Defendants.
------------------------------------------------------------------------X

Plaintiffs Daniel LeClaire, Maria LeClaire, Alfred Broomhead, Maryann Broomhead,

Katie Calhoun, Fred Como, Nancy Como, Terri Cotone, Carol Cyrus, Duane Cyrus, Emily

Flores, Jorge Flores, David Gehrs, Marci Gentile, Carmine Grippo, Lori Grippo, David Halm,

Jolie Halm, Francis Maher, Dane Mellon, Melinda Mellon, Bob Mestemaker, Connie

Mestemaker, Glenn Nelson, Karalee Nelson, Ann Orlando, David Orlando, Chrissie Ormsbee,

Jeff Ormsbee, Kimberly Shell and Matthew Shell (hereinafter "Plaintiffs"), by their attorneys,

CAMPANELLI & ASSOCIATES, P.C., as and for their complaint respectfully allege:

1

## I.     <u>NATURE OF THE ACTION</u>

1.     This action has arisen as part of a disturbing trend within New York State, wherein cell tower development companies seeking to install the most intrusive of cell towers adjacent to residential homes - - knowing that adjacent property owners have the right to oppose zoning applications for the approvals of same - - conspire with local government officials to intentionally circumvent those property owners' rights to be heard at public hearings before their local Zoning Boards of Appeals.

2.     For First Amendment purposes, public hearings before Zoning Boards of Appeals are statutorily designated public forums established under New York State law.

3.     Hearings are required to take place for the specific purpose of affording property owners who might be adversely impacted by the granting of a variance for a specific use, or proposed structure, with both notice and the ability to voice their objections to proposed projects, which would adversely impact their respective homes.

4.     In this case, a site developer, defendant Vertical Bridge, LLC, installed a massive fifteen (15) story, one hundred and fifty (150) foot tall cell tower in close proximity to the home of the plaintiffs.

5.     As set forth herein below, the Ballston Zoning Code encompasses multiple restrictions that prohibit this installation in the absence of Vertical Bridge having applied for, and being granted, four (4) separate variances from the Ballston Zoning Board of Appeals.

6.     This is because Vertical Bridge's tower: (a) vastly exceeds the existing height limitations for structures under the Code, thus requiring *a height variance* from the ZBA; (b) violates the minimum setback by having a setback of, at most, only fifty (50) feet when the minimum required setback is 75 feet, thus requiring *an area variance* from the ZBA; (c) requires

*a use variance* from the ZBA because the installation of a cell tower is not a permitted use in the rural zoning district where Vertical Bridge built it; (d) requires an additional *area variance* due to the lack of a necessary 200-foot buffer between farmland and the cell tower; (d) inflicts adverse impacts upon the adjacent and nearby homes belonging to the plaintiffs herein.

7.      To obtain each of those four (4) statutorily required variances, Vertical Bridge is required to file applications with the Zoning Board of Appeals (the "ZBA"), after which a public hearing must be held before the ZBA, under New York State law.

8.      As a condition precedent to such hearing, Vertical Bridge is legally required to publish notice of the hearing to ensure that all potentially interested persons are afforded both notice and a meaningful opportunity to appear at the hearing to voice their objection to, or support for, the granting of the variances, at the hearing before the ZBA.

9.      Knowing full well the dramatic adverse impacts its fifteen-story tower would inflict (and now inflicts) upon the adjacent and nearby homes, and that the homeowners who suffer those impacts would have undoubtedly vehemently opposed the ZBA's granting of the statutorily required variances, Vertical Bridge and Verizon Wireless conspired with representatives of the Town Board to deprive the plaintiffs of their rights to be heard before the ZBA from which such approvals would be statutorily required.

10.      More specifically, upon information and belief, as site developers have been doing across the State, Vertical Bridge and Verizon proffered to the Town Board that it could grant waivers from the requirements for multiple variances, each of which the Town Board is statutorily prohibited from granting, by purporting to conduct what is known as a *Monroe* Balancing Test.

11. Specifically, on January 10, 2023, the attorney for Vertical Bridge spoke in front of the Town Board and stated that the Board, under *Monroe,* is not bound to follow the zoning code.

12. A *Monroe* Balancing test refers to a *judicially-created* test created by a Court that had been called upon to adjudicate the conflicting interests of two separate and distinct municipalities. In *Monroe*, the Court ruled that the interests of one of the municipalities, which was seeking to extend an existing runway of its airport (so that the airport could remain viable by permitting new, larger jets to land in the airport), outweighed the interests of the adjacent municipality, which was seeking to enforce its local zoning code, to prevent the extension of that runway.

13. Notwithstanding the fact that New York State Law prohibits the Town Board from granting variances or waivers from the requirements of its Zoning Code, and this case does not involve any conflicting interests of two or more different municipalities, Vertical Bridge and Verizon induced the Town Board to take the position that *it could exercise powers and authority it does not possess*, by purporting to conduct its own *Monroe* Balancing Test.

14. In doing so, the Town Board purported to approve the construction of Vertical Bridge's cell tower, thereby effectively granting waivers and/or variances from the requirements of the Town's zoning code.

15. The Town Board thereby not only intentionally and deliberately circumvented the ZBA's exclusive authority entirely but contemporaneously and intentionally deprived the plaintiffs of their right to be heard before the ZBA – the forum designated by New York State Law, statutorily created for the very purpose of affording the plaintiffs an opportunity to be heard to oppose the granting of such variances and/or waivers.

4

16.     Simply stated, the Town Board acted *ultra vires* in that it cannot purport to acquire powers it does not possess by performing any type of "balancing test."

17.     Of greater import, the Town Board cannot perform any balancing test for the intended purpose of depriving property owners of their right to be heard before a designated public forum, that being at a properly noticed public hearing before the ZBA.

18.     Such rights are afforded protection under the First Amendment to the United States Constitution, both by the right to Petition Government for the Redress of Grievances and, contemporaneously, the Right to exercise Free Speech.

19.     The Plaintiffs allege that the Defendants engaged in a coordinated scheme to bypass statutorily mandated zoning procedures to deliberately, effectively, and permanently silence community input in violation of the Plaintiffs' rights under the First Amendment.

20.     This Court is authorized to grant the Plaintiffs' relief under 42 U.S.C. §1983.

21.     This action also includes supplemental state law claims arising from a common nucleus of operative fact.

## II.     **<u>JURISDICTION AND VENUE</u>**

22.     This action is brought pursuant to 42 U.S.C. §1983 and §1988, as well as 28 U.S.C. §2201, relating to the Plaintiffs' rights secured by the First and Fourteenth Amendments to the United States Constitution.

23.     Jurisdiction is conferred on this Court by 28 U.S.C. §1343(a)(3) and §1343(a)(4), which provide for original jurisdiction in this Court for all suits arising under the Constitution and laws of the United States.

24.     The supplemental jurisdiction of the District Court is invoked pursuant to 28

U.S.C. §1367 for inter-related state law claims which arise from occurrences giving rise to the

Federal claims and which have a common nucleus of operative fact.

25.     Venue lies in the Court pursuant to 28 U.S.C. §1391, as the defendant Town of

Ballston is a municipal corporation duly formed and existing under the laws of the State of New

York, with its principal place of business located within the Northern District of New York at

323 Charlton Road, Ballston Spa, New York 12020, and all of the events and omissions giving

rise to the Plaintiffs' claims occurred within the County of Saratoga, Northern District of New

York.

### III.    THE PARTIES

#### A.    The Plaintiffs

26.     At all times herein mentioned, Plaintiff Daniel LeClaire was, and is, an individual

and property owner whose physical house, at which he resides in Burnt Hills, New York, is

located eight hundred and eighty-five (885) feet from where defendant Vertical Bridge built its

fifteen story (150 foot) tower.

27.     At all times herein mentioned, Plaintiff Maria LeClaire was, and is, an individual

and property owner whose physical house, at which she resides in Burnt Hills, New York, is

located eight hundred and eighty-five (885) feet from where defendant Vertical Bridge built its

fifteen story (150 foot) tower.

28.     At all times herein mentioned, Plaintiff Alfred Broomhead was, and is, an

individual and property owner whose physical house, at which he resides in Burnt Hills, New

York, is located seven hundred and seventy-five (775) feet from where defendant Vertical Bridge

built its fifteen story (150 foot) tower.

29.    At all times herein mentioned, Plaintiff Maryann Broomhead was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located seven hundred and seventy-five (775) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

30.    At all times herein mentioned, Plaintiff Katie Calhoun was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located one thousand four hundred and eighty-five (1,485) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

31.    At all times herein mentioned, Plaintiff Fred Como was, and is, an individual and property owner whose physical house, at which he resides in Burnt Hills, New York, is located eight hundred (800) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

32.    At all times herein mentioned, Plaintiff Nancy Como was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located eight hundred (800) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

33.    At all times herein mentioned, Plaintiff Terri Cotone was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located nine hundred (900) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

34.    At all times herein mentioned, Plaintiff Carol Cyrus was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located

one thousand four hundred and seventy-five (1,475) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

35.     At all times herein mentioned, Plaintiff Duane Cyrus was, and is, an individual and property owner whose physical house, at which he resides in Burnt Hills, New York, is located one thousand four hundred and seventy-five (1,475) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

36.     At all times herein mentioned, Plaintiff Emily Flores was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located one thousand four hundred and fifty (1,450) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

37.     At all times herein mentioned, Plaintiff Jorge Flores was, and is, an individual and property owner whose physical house, at which he resides in Burnt Hills, New York, is located one thousand four hundred and fifty (1,450) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

38.     At all times herein mentioned, Plaintiff David Gehrs was, and is, an individual and property owner whose physical house, at which he resides in Burnt Hills, New York, is located one thousand four hundred and eighty-five (1,485) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

39.     At all times herein mentioned, Plaintiff Marci Gentile was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located one thousand three hundred and ten (1,310) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

40.    At all times herein mentioned, Plaintiff Carmine Grippo was, and is, an individual and property owner whose physical house, at which he resides in Burnt Hills, New York, is located one thousand two hundred (1,200) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

41.    At all times herein mentioned, Plaintiff Lori Grippo was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located one thousand two hundred (1,200) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

42.    At all times herein mentioned, Plaintiff David Halm was, and is, an individual and property owner whose physical house, at which he resides in Burnt Hills, New York, is located one thousand two hundred and twenty-five (1,225) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

43.    At all times herein mentioned, Plaintiff Jolie Halm was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located one thousand two hundred and twenty-five (1,225) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

44.    At all times herein mentioned, Plaintiff Frances Maher was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located two hundred and twenty-five (225) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

45.    At all times herein mentioned, Plaintiff Dane Mellon was, and is, an individual and property owner whose physical house, at which he resides in Burnt Hills, New York, is

located nine hundred and fifty (950) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

46.     At all times herein mentioned, Plaintiff Melinda Mellon was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located nine hundred and fifty (950) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

47.     At all times herein mentioned, Plaintiff Bob Mestemaker was, and is, an individual and property owner whose physical house, at which he resides in Burnt Hills, New York, is located one thousand two hundred and twenty-five (1,225) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

48.     At all times herein mentioned, Plaintiff Connie Mestemaker was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located one thousand two hundred and twenty-five (1,225) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

49.     At all times herein mentioned, Plaintiff Glenn Nelson was, and is, an individual and property owner whose physical house, at which he resides in Burnt Hills, New York, is located one thousand two hundred and seventy (1,270) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

50.     At all times herein mentioned, Plaintiff Karalee Nelson was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located one thousand two hundred and seventy (1,270) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

51.    At all times herein mentioned, Plaintiff Ann Orlando was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located four hundred and seventy-five (475) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

52.    At all times herein mentioned, Plaintiff David Orlando was, and is, an individual and property owner whose physical house, at which he resides in Burnt Hills, New York, is located four hundred and seventy-five (475) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

53.    At all times herein mentioned, Plaintiff Chrissie Ormsbee was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located nine hundred (900) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

54.    At all times herein mentioned, Plaintiff Jeff Ormsbee was, and is, an individual and property owner whose physical house, at which he resides in Burnt Hills, New York, is located nine hundred (900) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

55.    At all times herein mentioned, Plaintiff Kimberly Shell was, and is, an individual and property owner whose physical house, at which she resides in Burnt Hills, New York, is located nine hundred (900) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

56.    At all times herein mentioned, Plaintiff Matthew Shell was, and is, an individual and property owner whose physical house, at which he resides in Burnt Hills, New York, is

located nine hundred (900) feet from where defendant Vertical Bridge built its fifteen story (150 foot) tower.

### B.    The Defendants

57.    Upon information and belief, at all relevant times mentioned herein, Defendant VERTICAL BRIDGE DEVELOPMENT, LLC ("Vertical Bridge"), is a foreign limited liability company organized under the laws of the State of Delaware, authorized to do business in the State of New York, and an agent for service of process in New York which is Cogency Global, Inc., 122 E. 42nd Street, 18th Floor, New York, New York 10168.

58.    Upon information and belief, at all relevant times mentioned herein, Defendant VERTICAL BRIDGE II, LLC ("Vertical Bridge"), is a foreign limited liability company organized under the laws of the State of Delaware, authorized to do business in the State of New York, and an agent for service of process in New York which is Cogency Global, Inc., 122 E. 42nd Street, 18th Floor, New York, New York 10168.

59.    Upon information and belief, at all relevant times mentioned herein, Defendant Town of Ballston (hereinafter the "Town") was, and continues to be, a municipal corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 323 Charlton Road, Ballston Spa, New York 12020, within the County of Saratoga, State of New York.

60.    Upon information and belief, at all relevant times mentioned herein, defendant ERIC CONNOLLY was, and is, an individual and the Supervisor for the Town of Ballston with an actual place of business and/or employ at 323 Charlton Road, Ballston Spa, New York 12020.

61.     Upon information and belief, at all relevant times mentioned herein, defendant MICHAEL CAROTA was, and is, an individual and Town Board Member for the Town of Ballston, with an actual place of business and/or employ at 323 Charlton Road, Ballston Spa, New York 12020.

62.     Upon information and belief, at all relevant times mentioned herein, defendant CHUCK CURTISS was, and is, a Town Board Member for the Town of Ballston, with an actual place of business and/or employ at 323 Charlton Road, Ballston Spa, New York 12020.

63.     Upon information and belief, at all relevant times mentioned herein, defendant ROB FENDRICK was, and is, a Town Board Member for the Town of Ballston, with an actual place of business and/or employ at 323 Charlton Road, Ballston Spa, New York 12020.

64.     Upon information and belief, at all relevant times mentioned herein, defendant KELLY JASINSKI was, and is, a Town Board Member for the Town of Ballston, with an actual place of business and/or employ at 323 Charlton Road, Ballston Spa, New York 12020.

65.     Defendants The Town of Ballston, Eric Connolly, Michael Carota, Chuck Curtiss, Rob Fendrick, and Kelly Jasinski are hereinafter collectively referred to herein as the "Town Defendants."

66.     Upon information and belief, defendant CELLCO PARTNERSHIP d/b/a Verizon Wireless (hereinafter "Verizon Wireless) is a domestic Limited Partnership organized under the laws of the State of New York, with a principal place of business situated at 1 Verizon Way, Basking Ridge, NJ 07920, and an agent for service of process in New York which is CT Corporation, 28 Liberty Street, New York, NY 10005.

67.    Defendant Verizon Wireless is joined as a defendant herein, because it may possess a claim that it will be affected by the granting of the relief requested by the Plaintiffs herein.

## IV.    FACTUAL BACKGROUND

A.    Separation of Powers and Designated Public Forums
For Zoning Matters under New York State Law

68.    The State of New York has bestowed upon towns the authority to enact and enforce local zoning regulations subject to a statutorily created system of Separation of Powers.

69.    Under this statutory scheme, the State of New York granted towns the authority to enact local zoning codes that impose restrictions upon: (a) the *uses* of real property, and (b) *the structures* built for such uses, under New York Town Law §261.

70.    As is explicitly set forth within both state law and local zoning codes, the legislative intent of such zoning codes is: (a) to prevent real properties from being used in a manner that would be incompatible with the uses of adjacent and/or nearby properties; (b) to limit the size and placement of structures to prevent potential adverse impacts from the construction and maintaining of same; (c) to prevent unnecessary or excessive adverse aesthetic impacts, and/or reductions in the property values of adjacent and/or nearby properties; and (d) for safety concerns, among others. *See* Town Law § 263 and Town Code §301-273.

71.    The Town of Ballston codified its legislative intent for enacting specific regulations for the siting and construction of cell towers. Within Chapter 113 of its Code, the Town set forth that the "purpose" of such regulations is to "protect the public health, safety and general welfare," to "protect residential areas and land uses from potential adverse impacts of

towers," and to "minimize the adverse visual impacts of the towers . . . through careful siting."
Ballston Town Code Chapter 113, Section 2.

72.    The authority that New York State granted to the Town of Ballston to adopt its
Zoning Code and Chapter 113 thereof, is statutorily circumscribed by a mandatory New York
State Law requirement, which mandates that if the Town enacts a local zoning code, it is
*statutorily required* to create and maintain a separate and distinct Zoning Board of Appeals,
which is vested with the *exclusive* power and authority to grant waivers or variances from the
limitations and/or requirements of the Zoning Code. *See* New York Town Law § 267(2).

73.    Under New York's Statutory scheme, an application for a variance or waiver from
any requirement of the Towns' zoning code must be made to the Zoning Board of Appeals
('ZBA"). Pursuant to New York Town Law §267-a(7), the ZBA is then statutorily required to
hold a public hearing on each such application for the purpose of affording the public, and
potentially affected persons, the opportunity to be heard to oppose, or support, the granting of
each application for each variance and/or waiver.

74.    Under New York law, and from a First Amendment perspective, public hearings
before the ZBA are the *statutorily designated public forum* created for the specific purpose of
affording those who seek to speak in favor of, or against, the granting of any variance
application, an opportunity to be heard with respect to same, and to Petition in favor of, or
against, the ZBA's granting of such variance applications.

75.    To ensure that interested persons are afforded an opportunity to be heard at the
public hearing before the ZBA, New York State codified notice requirements that explicitly
require the publication of public notice for such hearings, which required that advance notice of

15

such hearings be published in a newspaper to ensure that persons are afforded notice of such hearings, and a meaningful opportunity to appear and be heard at same. New York Town Law §264-a(7).

76.    To ensure that members of the Zoning Board of Appeals are qualified to conduct and perform a balancing of the interests of those supporting and those opposing applications for variances, members of the ZBA are statutorily required to undergo a minimum number of hours of training each year, as required under New York Town Law §267(7-a).

77.    By contrast, since they possess no authority whatsoever to entertain applications for waivers or variances from the requirements of the Town's Zoning Code, Ballston Town Board members are not required to undergo any such training.

78.    To make crystal clear its intent and to *solidify the statutorily designed separation of powers* between the Town Board and the Town's Zoning Board of Appeals, New York State additionally enacted New York Town Law §267(3), which explicitly prohibits any member of a Town Board from serving on the Town's Zoning Board of Appeals.

79.    Consistent with the authority granted to it under Town Law §261, the defendant Town of Ballston adopted its own zoning code, which is encompassed in Chapter 138 of the Code of the Town of Ballston.

80.    As required by State Law, the Town created a Zoning Board of Appeals and concomitantly enacted section §138-131 of the Town Code which provides: "**The Zoning Board of Appeals shall have the power, upon appeal from a decision or determination of the Enforcement Officer, to grant use and area variances** [i.e., the zoning code]"[emphasis added].

16

B.  Vertical Bridge Conspired to Induce the Town Board to Deprive Adjacent and
Nearby Property Owners of Their Right to Be Heard Before the ZBA
And to Induce the Town Board to Engage in Patently *Ultra Vires* Acts

81.    As described hereinabove, under New York State law, the Ballston Town Board is
prohibited from intruding into the exclusive power of the Town's Zoning Board of Appeals to
grant variances from the requirements of the Town's Zoning Code, or waivers therefrom.

82.    Under no circumstances is a Town Board authorized to grant a waiver or a
variance for any use limitation, height limitation, or area limitation existing under the Town's
Zoning Code.

83.    Under the Town Code and New York State law, Vertical Bridge could not
lawfully build its 150-foot-tall cell tower without having applied for, and being granted, four (4)
specific variances from the Zoning Board of Appeals, which would have included: (a) a *use*
variance, (b) a *height* variance, and (c) two (2) *area* variances.

84.    Notwithstanding same, upon information and belief, the principal(s) of Vertical
Bridge, and an attorney representing both Vertical Bridge and Verizon Wireless, as the agent
representing both, conspired with members of the Town Board to deprive the Plaintiffs of any
opportunity to appear before the ZBA to voice their opposition to any approval for the building
of the tower, by contemporaneously conspiring to circumvent *entirely* the powers of the ZBA to
entertain the required variance applications.

85.    To achieve those objectives, these Defendants persuaded the Town Board to
purportedly conduct a "*Monroe* Balancing Test," which Town Board members are neither
trained nor statutorily permitted to conduct.

86.    Upon information and belief, at a public Town Board Meeting that took place on
January 10, 2023, an attorney representing both defendants, Vertical Bridge and Verizon

Wireless, confirmed Vertical Bridge's request, on the record, that the Town Board conduct a *Monroe* Balancing test for the explicitly stated purpose of granting Vertical Bridge an exemption from the zoning requirements under the Town Code.

87.     Vertical Bridge's attorney explicitly stated that they were asking the Board to perform a *Monroe* balancing test to avoid the required approvals of three boards whose approvals would be required for Vertical Bridge to build its tower, one of which the attorney specifically named was "the ZBA."

88.     That meeting and the request made by the attorney for Vertical Bridge, is a public record maintained by the Town of Ballston. Such record is hereby incorporated by reference herein, and made part of this complaint by virtue of same.

89.     At the conclusion of the "*Monroe* Balancing Test," conducted on February 13, 2024, the Town Board voted to waive and/or waived the requirements for the four (4) variances that were required under the Town's zoning code, and simply approved the building of Vertical Bridge's 150-foot-tall cell tower, without any approvals of the ZBA, whatsoever.

90.     Upon information and belief, Vertical Bridge induced the Town to act in excess of its statutory authority in this manner, and to concomitantly effectuate a complete deprivation of the Plaintiffs' rights to be heard before the ZBA by offering to tender substantial monies, equipment, and assorted "perks" to the Town.

91.     Upon information and belief, Town Board members conspired to waive the requirements for the necessary variances in violation of both their own Town Code and New York State law.

92.    As influenced by Defendants Vertical Bridge and Verizon Wireless, the Ballston Town Board granted Vertical Bridge approval to build its Tower, thereby granting Vertical Bridge variances, and/or waivers from the variance requirements, on February 13, 2024.

### III.    Injury to the Plaintiffs

93.    If Vertical Bridge is permitted to keep its fifteen-story tower, it will not only violate the provisions of the Town's zoning code, but it will also inflict upon the Plaintiffs' homes the precise types of adverse impacts that the applicable code restrictions under the Ballston Town Code, and New York Town Law §261, were specifically enacted to prevent.

94.    Municipalities across the United States impose setback requirements that mandate that cell towers be sited at a minimum distance from residential homes.

95.    Those minimum setback requirements are imposed to ensure that there is a sufficient setback from the tower to afford the nearby homes sufficient protection from the dangers of structural failures, ice fall, debris fall, and even fires, consistent with the stated legislative intent of New York Town Law §261 and Ballston Code §113-15.

96.    For these reasons, when the Town adopted its own regulations restricting the installation of cell towers, it adopted Code Section §138-18, which prohibits the installation of cell towers in residential, rural zoning districts, which is the zoning district of the site at which Vertical Bridge built its 150-foot tower described herein.

97.    The Town has also adopted Code Section §138-21(D)(3) which states: "Buffers between farm and nonfarm uses, and protection of agricultural lands. All minor and major subdivisions and commercial developments in the Rural District shall provide for a minimum 200-foot buffer between itself and any existing active agricultural operations that share all or part of a common lot line with such proposed development. Such buffers shall be established to

reduce the exposure of new nonfarm uses to odors, noise, and other potential nuisances associated with the agricultural operation and to protect the agricultural operation from potential complaints related to same."

98.     As pointed out on page 9 of Defendant's Environmental Assessment Form, Part I (attached hereto as Exhibit "A"), there is land zoned as Agricultural directly to the south of the Tower. As evidenced by the map attached hereto as Exhibit "B", there is not a sufficient 200-foot buffer between the situs of the Tower and the adjacent Agricultural plot.

99.     It is for those same reasons that the Town enacted Section §113-15, which requires the minimum setback for cell towers to be 50% of the height of the tower, which in this case requires it to be setback a minimum of 75 feet, which is not possible on a parcel of land that is 80 feet by 80 feet.

100.    It is also for those reasons that the Town additionally imposed a height limitation for accessory structures in this rural zoning, limiting their height to 40 feet, which Vertical Bridge's tower exceeds by more than three hundred and seventy-five (375%) percent.


A.    Dangers of Ice Fall, Debris Fall, and Structural Failures

101.    As is a matter of known fact, when ice that has formed at or near the top of a 150-foot tower begins to thaw and falls from the tower, such chunks of ice reach speeds in excess of 67 miles per hour before reaching the ground, posing a significant danger to persons or property within the fall zone. A true copy of a physicist's report evidencing same is annexed to and made part of this complaint as Exhibit "C."

102.     It is no different for debris fall, where a piece of equipment dislodges from the tower, or even if a worker drops a tool during regular monthly maintenance visits. Annexed

hereto as Exhibit "D" is an image of a hammer that crashed through the roof of a home after having been dropped by a worker working on a nearby cell tower.

103.    When a structural failure occurs, even if the failure is that of a "brand-new" cell tower, a 165-foot, fifteen thousand (15,000) pound tower can go from being 165 feet tall to being 165 feet long in a matter of seconds. Annexed hereto and made part hereof as Exhibit "E" are photographic images of a new tower failure in Oswego, New York, the result of which was the crushing of a fire chief's vehicle.

104.    Apart from those well-documented dangers, cell tower fires occur far more often than most laypersons imagine. *See* various images of cell tower fires annexed hereto as Exhibit "F."

105.    If, as is required by New York State law, Vertical Bridge was required to apply for and obtain variances from those restrictions, the Plaintiffs would be afforded the opportunity to be heard before the ZBA, to oppose granting relief from those restrictions, which were intended to protect their property from the precise dangers they will otherwise face.

B.    Adverse Aesthetic Impacts and Reduction in Property Values

106.    The installation of such a massive tower so unnecessarily close to the Plaintiffs' homes has inflicted severe adverse aesthetic impacts upon their homes, and contemporaneously reduced their property values, both of which federal courts have recognized as valid grounds upon which local zoning boards can deny zoning applications for the construction of towers, such as the one Vertical Bridge built as described herein.

107.    The tower dominates the Plaintiffs' views from each of the windows of their homes, which face the tower. It does not merely stick out like a sore thumb; it dominates the

skyline and looms over the houses any time they seek to entertain family and/or friends in their backyards. *See* Exhibit "G."

108.    As such, each of the Plaintiffs is suffering a significant injury-in-fact because the tower is built, and concomitantly, each of the Plaintiffs possesses standing to maintain this action and to seek redress, compensatory damages, and injunctive relief for the violation of their rights under the First and Fourteenth Amendments, pursuant to 42 U.S.C. §1983.

## COUNT I

### VIOLATION OF PLAINTIFFS' RIGHTS UNDER
### THE FIRST AMENDMENT TO THE U.S. CONSTITUTION
Right to Petition Government to Redress Grievances,
Right to Free Speech, and Prior Restraint
(Against All Defendants)

109.    Plaintiffs reallege, reiterate, and incorporate herein by reference, the allegations set forth in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

### Right to Petition

110.    At all times described herein, each of the Plaintiffs was vested with the Right to Petition Government to Redress Grievances, as guaranteed to each of them under the First Amendment to the United States Constitution.

111.    At all times described herein, that right encompassed the right to attend public hearings before the ZBA as the designated public forum vested by the State of New York, with the exclusive authority and power to entertain applications for variances and/or waivers from the requirements of the Town of Ballston Zoning code.

112.    At all times described herein, that right encompassed the right to speak at such public hearings before the ZBA, and to seek administrative relief from the ZBA in the form of denials of applications for use, height, and area variances, the granting of which would or could adversely impact each of the Plaintiffs' respective homes.

113.    By taking intentional actions explicitly intended to (a) circumvent the authority of the ZBA entirely, (b) prevent such hearings from ever taking place, and concomitantly, thereby depriving each of the Plaintiffs of their opportunity to be heard before the ZBA, the Defendants deprived each of the Plaintiffs of their First Amendment right to Petition the Government for the Redress of Grievances, and effectuated a permanent prior restraint against the Plaintiffs' ability to exercise such constitutionally protected rights.

114.    Under the facts of this case, the Plaintiffs' Right to Petition is especially acute because the Defendants' actions permanently deprived the Plaintiffs of their ability to appear before a statutorily-created public forum, which was created, maintained, and operating under established, state-mandated procedures, for the specific purpose of affording the very exercise of Petition and Free Speech rights, of which the Defendants have deprived the Plaintiffs herein.

<u>Right to Free Speech & Prior Restraint</u>

115.    At all times described herein, each of the Plaintiffs contemporaneously possessed a right under the First Amendment to the United States Constitution to engage in free speech, which is most acute where:

(a)    a specific public forum has been designated by the government as a specific venue intended to afford a time and a place at which anyone may proffer any speech pertaining to the subject matter pending before that forum and

(b)     the speaker who seeks to speak at that designated public forum falls within the intended class for whom the designated public forum has been made available.

116.     As detailed herein above, the State of New York has created a process wherein it: (a) vested sole authority to grant waivers or variances from local zoning codes to Zoning Boards of Appeal and (b) implemented a mandatory procedural process wherein it created requirements for public hearings before ZBAs, as the designated public forum at which persons who may possess an interest in being heard upon applications before the ZBA, receive notice, and are permitted to speak at such designated public forum.

117.     As described herein, the Defendants, acting under color of State law, purported to grant a blanket approval for defendant Vertical Bridge to build its tower, thereby effectively granting waivers and variances from the Town Code, and intentionally circumventing the statutorily-required process of Vertical Bridge filing applications and receiving approvals from the ZBA, which the ZBA can only decide after a properly-noticed public hearing, at which all interested persons, and specifically the Plaintiffs herein, could have appeared and been heard.

118.     By circumventing that statutorily mandated process *entirely* and purporting to *exercise powers it does not possess*, the Ballston Town Board (and the Town Board Defendants named herein) not only acted *ultra vires*, but they effectively and intentionally imposed a complete and permanent *prior restraint* upon the Plaintiffs' rights of Free Speech in violation of the Plaintiffs' rights afforded protection under the First Amendment to The United States Constitution.

119.     As the final decision-makers of the Town, the formal decision of the Town Board has the force and effect of a Town law, regulation, or policy through which, in this case, the

Town Board effectuated a complete prior and permanent restraint against the Plaintiffs' rights to Petition and Free Speech.

120.   Under clearly-established law addressed by the United States Supreme Court more than 25 years ago, in <u>Arkansas Educational Television Commission v. Forbes</u>, 523 U.S. 666 (1998) since the restraint effectively imposed by the Town Board excluded speakers who fall within the class of speakers to which a designated public forum was explicitly made available (i.e., excluded persons from being heard at a publicly-noticed public hearing before the ZBA to oppose variance applications which Vertical Bridge was mandated by State law to file), the Town Board's actions are subject to strict scrutiny - - which is a test that the Defendants cannot meet.

121.   To survive strict scrutiny, the Town must prove that its intentional circumvention of its own Zoning Board of Appeals, and resulting deprivation of the rights of any interested persons from ever being heard before the ZBA, furthered a compelling interest and that circumventing the Town's own ZBA was a measure narrowly tailored to achieve that interest.

122.   The Town and the Town Defendants had no legitimate compelling interest in circumventing the Town's own Zoning Board of Appeals.

123.   It is the exclusive function of the Zoning Board of Appeals to review variance applications and to conduct any balancing tests pertaining to any proposed use of property, or the construction of any structure, under the applicable provisions of the Town's Zoning Code.

124.   The Zoning Board of Appeals has the exclusive authority to weigh any purported benefit that would be realized from the construction of a proposed structure against the resulting adverse impacts. In doing so, the Zoning Board of Appeals must take into consideration the

precise types of potential adverse impacts as set forth in the explicit language of both New York

State Town Law §263 and the Town's own zoning code Section §301-273.

125.    This is especially true since members of the ZBA are statutorily required to

complete hours of annual training to ensure that they are qualified to conduct such analyses and

tests, while Town Board members are not. *See* New York State Town Law § 267-a(7).

126.    Nor were there any exigent circumstances that justified the Town Board's

attempted circumvention of the ZBA's exclusive jurisdiction.

127.    The Town Board Defendants proffered that they were conducting a *Monroe*

balancing test for alleged safety reasons based upon anecdotal evidence of gaps in wireless

service within the Town, and the potential effects such gaps might have upon emergency

services.

128.    None of the Defendants performed, or caused to be performed, any drive tests to

determine (i) the need for the 15-story tower, (ii) what benefits, if any, would be derived from

the installation of the tower, or (iii) for whatever needs may exist or existed, they could not have

been remedied by a shorter tower, or the installation of a tower at any alternative, potentially less

intrusive, location.

129.    Under the circumstances, *Defendants Vertical Bridge and Verizon Wireless*

*simply advised* the Ballston Town Board that they could circumvent the ZBA entirely (and

lobbied that they do so) by conducting a purported *Monroe* balancing test, thereby granting

waivers from (a) the requirements for a height variance, (b) the requirements for a setback

variance and (c) the requirements for a use variance.

130.    The actions of the Defendants violated and/or deprived the Plaintiffs of their

rights under the First Amendment to Petition Government for the Redress of Grievances and to

exercise their Rights to Free Speech. Contemporaneously, the Defendants' acts effectuated a Prior Restraint upon Plaintiffs' rights to exercise both.

131.    As a result of the foregoing, the Plaintiffs have sustained or will sustain damages, which are imminent if relief is not granted herein. The Plaintiffs are entitled to pursue redress pursuant to 42 U.S.C. §1983 and to recover an award of monetary damages, injunctive relief, and a declaratory judgment pursuant to same, together with an award for reasonable attorney's fees pursuant to 42 U.S.C. §1988, and such other and further relief as the Court deems appropriate.

132.    Plaintiffs have suffered irreparable injury due to the construction of this tower because their residential homes are forever detrimentally impacted by same, and their home and their relationship with their neighborhood is unique and cannot be replaced.

### COUNT II
### CONSPIRACY TO DEPRIVE PLAINTIFFS
### OF THEIR FIRST AMENDMENT RIGHTS
### (Against All Defendants)

133.    Plaintiffs reallege, reiterate, and incorporate herein, by reference, the allegations set forth in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

134.    As described herein, the Defendants entered into an agreement to act in concert, to inflict an unconstitutional injury upon the Plaintiffs, and took affirmative acts in furtherance of that goal, causing the Plaintiffs to sustain damages.

135.    Defendants Vertical Bridge and Verizon Wireless (as private parties) conspired with the Town Defendants (as State actors) by entering into a meeting of the minds, wherein they agreed to act in concert to (a) circumvent the authority of the ZBA, (b) circumvent the statutorily-required public hearing process required to take place before the ZBA as the

designated public forum at which such public hearings are required to take place, and concomitantly (c) circumvent each of the Plaintiffs' rights to appear and be heard before the ZBA.

136.    These Defendants conspired to circumvent all of the foregoing and to cause the Town Defendants to act in excess of their legal authority by having the Town Board conduct a "*Monroe* balancing test" to not only exercise powers and/or authority, which the Town Board does not possess, but to contemporaneously circumvent everything described within the paragraph immediately herein above.

137.    Defendants Vertical Bridge and Verizon Wireless took acts in furtherance of the conspiracy by explicitly requesting of the Town Defendants that they conduct a *Monroe* balancing test for the specifically stated purpose of circumventing the ZBA and the State-mandated requirements that (a) Vertical Bridge be required to apply for variances from the ZBA, (b) a public hearing for same be publicly noticed and (c) interested persons, including the Plaintiffs herein be afforded to appear at such public hearings and be afforded the opportunity to petition the ZBA to deny such applications.

138.    The Town Defendants took affirmative acts in furtherance of the conspiracy by explicitly purporting to approve Vertical Bridge's tower, thereby effectively granting Vertical Bridge variances and/or waivers of such variance requirements for the specifically stated purpose of circumventing the ZBA and the State-mandated requirements that (a) Vertical Bridge be required to apply for variances from the ZBA, (b) a public hearing for same be publicly noticed and (c) interested persons, including the Plaintiffs herein be afforded to appear at such public hearings and be afforded the opportunity to petition the ZBA to deny such applications.

139.    Each of the Defendants' acts has damaged the Plaintiffs by (a) permanently effectuating a prior and permanent restraint upon the Plaintiffs' respective rights to Petition and Freedom of Speech and (b) purporting to have granted approval for the construction of a massive fifteen-story tower that has dramatically adversely impacted the Plaintiffs' homes, and the value of such homes, and the respective Plaintiffs' use and enjoyment of same.

140.    As described herein, each of the Defendants acted in a willful manner, culminating in an agreement which, as carried out, violated the Plaintiffs' rights.

141.    Conspiracies of this precise nature are part of a disturbing trend taking place across New York State where site developers, seeking to install particularly intrusive cell towers in residential neighborhoods, approach local governments and offer them appreciable amounts of monies, free equipment, and perks to permit them to install such cell towers on town properties. *See, e.g.,* Exhibit H.

142.    Upon information and belief, when a sight developer plans to build a highly intrusive cell tower in a residential neighborhood, and realizes that due to the intrusiveness of their proposed tower, the neighbors will vigorously oppose the granting of any variances necessary to permit the building of same, the site developers lobby representatives of the respective Town to circumvent the objections of the neighbors, and the authority of the local Zoning Board of Appeals entirely.

143.    The site developer convinces the representatives that by simply conducting a "*Monroe* balancing test," the Town Board can "determine" that the project is exempt from local zoning laws and, as a consequence, no variances, waivers, or permits under the local zoning code are required. *See, e.g.*, Exhibit H.

144.    Upon information and belief, this is precisely what happened in this case.

145.    Upon information and belief, after four (4) years of discussing the installation of a cell tower at the subject site herein, with no application for variances having been filed for fear that the ZBA would deny them, *defendants Vertical Bridge and Verizon Wireless advised* the Ballston Town Board that they could circumvent the ZBA entirely, by conducting a purported *Monroe* balancing test, thereby granting waivers from (a) the requirements for a height variance, (b) the requirements for a setback variance and (c) the requirements for a use variance.

146.    Vertical Bridge and Verizon Wireless' representative additionally lobbied for same to the Town Board on the record at a meeting of the Town Board.

147.    Upon information and belief, Defendants Vertical Bridge, Verizon Wireless, and the Town Defendants acted in concert and conspired to deprive the Plaintiffs of their First Amendment right to be heard before the Zoning Board of Appeals, contemporaneously violating the Plaintiffs' rights of free speech, and rights to Petition Government for the Redress of Grievances.

148.    Upon information and belief, these Defendants carried out a plan to circumvent the Town's Zoning Board of Appeals *entirely*, thereby precluding and depriving the Plaintiffs of any opportunity to be heard at any public hearings before the ZBA, whose members are the sole representatives of the Town who are trained to consider and balance the potential concerns of the Plaintiffs herein, against the interests of defendant Vertical Bridge in pursuing construction of its fifteen (15) story cell tower.

149.    This action violates the New York statutory mandate that the Town must afford the Plaintiffs with notice, and an opportunity to be heard before the ZBA, as a statutorily required condition precedent to the granting of any variances, or waivers of the requirement of

the Town Zoning Code, which would be required to permit defendant Vertical Bridge to build its tower.

150.    Through this conspiracy and the overt acts taken in furtherance of it, these Defendants violated Plaintiffs' Rights to Petition the Government for the redress of grievances, and right to free speech, effectuating a complete and permanent prior restraint against the Plaintiffs' exercise of such rights.

151.    Upon information and belief, these Defendants acted in concert to bypass the ZBA for the purpose of depriving the Plaintiffs of their rights to appear at a public hearing before the ZBA.

152.    Upon information and belief, Defendants agreed to bypass the ZBA, because all of the Defendants knew that the public, and those most greatly affected (which included the Plaintiffs herein), would oppose such variance applications.

153.    Upon information and belief, in exchange for agreeing to circumvent the ZBA, defendant Vertical Bridge agreed to provide the Town with money, perks, and/or gifts.

154.    The Town Defendants had no compelling interest to justify circumventing their own Zoning Board of Appeals, and there were no exigent circumstances that compelled them to do so.

155.    As a result of the foregoing, the Plaintiffs have sustained, and will sustain damages, which are imminent if relief is not granted herein, and they are entitled to pursue redress pursuant to 42 U.S.C. §1983, and to recover an award of monetary compensatory damages, injunctive relief and a declaratory judgment, punitive damages, and an award for reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and such other and further relief as the Court deems appropriate.

156.    Plaintiffs have suffered irreparable harm due to the construction of the tower because their residential homes are detrimentally impacted by same, and both their homes and their relationships with their neighborhood are unique and cannot be replaced.

**COUNT III**
**ARBITRARY, CAPRICIOUS, AND ILLEGAL ACTION**
**IN VIOLATION OF THE TOWN OF BALLSTON ZONING CODE,**
**CPLR §3001**
**New York State Claim**
**(Against All Defendants)**

157.    Plaintiffs reallege, reiterate, and incorporate herein, by reference, the allegations set forth in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

158.    This Count is asserted pursuant to CPLR §3001.

159.    Under clearly established New York State law, town boards, including the Town Board of the Town of Ballston, are creatures of statute that possess no powers other than those conferred upon it by statute.

160.    Under New York State Law, town boards possess no legal authority to grant waivers or variances from the requirements of the Ballston Town Code, and, more specifically, the provisions of its zoning law, including, but not limited to, Chapter 113 et seq.

161.    By granting approval for the construction of Vertical Bridge's tower described herein, the Town Board and the Town Board members and Defendants acted in excess of their legal authority, which they did not and do not possess under any federal, state, or local law.

162.    Construction of the Tower is prohibited because it does not comply with the requirements of the Town of Ballston Zoning Code in that:

A.    The Developer had not been required to obtain a necessary area variance for relief from the setback requirements of the Town Code.

32

B.     The Developer had not been required to obtain a necessary area variance for relief from the height limitations of the Town Code.

C.     The Developer had not been required to obtain a necessary use variance for relief from the restriction against its proposed use which is a prohibited use in the respective rural zoning district within which its proposed construction would be situated.

D.     The Developer had not been required to obtain a Special Use Permit, as is required under the Town Code.

E.     The Developer had not been required to obtain Site Plan Approval as is required under the Town Code.

F.     The Developer had not been required to comply with the Town's Wireless Telecommunications law.

163.    No public hearings for any application to construct such a tower, or for any variances or waivers from these requirements of the Town Zoning Code were held. This violates the New York State Town Law and the Zoning Code.

164.    Each of the Plaintiffs herein is aggrieved by the Town Board and Town Defendants purportedly granting blanket approval for the construction of the subject tower, thereby effectively granting Vertical Bridge a waiver from the requirements for use and area variances. Such blanket approval (albeit unlawful) has negatively affected their nearby property by inflicting severe and unnecessary adverse aesthetic impacts upon their homes, reducing the property values of their homes, and subjecting them to the dangers of structural failures, ice fall, and debris fall.

165.    The Plaintiffs have no adequate remedy at law, as monetary damages cannot adequately compensate them for the harm caused by the Defendants' failure to enforce the local

zoning code and their purported granting of illegal variances and/or waivers from its requirements.

166.    The balance of equities favors the Plaintiffs, as the harm to Plaintiffs' property outweighs any potential benefit to the Defendants.

167.    Plaintiffs are likely to succeed on the merits of this case, as the variances and/or waivers purportedly granted by the Town Defendants were in excess of the jurisdictional authority of the Town Board.

168.    In addition, the Plaintiffs herein are entitled to a declaratory judgment, adjudging and declaring any decision by the Town Board and Town Defendants purporting to approve the construction of Vertical Bridge's tower to have been, and is, void *ab initio*, pursuant to CPLR §3001.

The Statutorily-Mandated Variances and Zoning Approvals<br>Which Vertical Bridge is Required to Obtain by Proper Application

169.    Under New York State Law, the Ballston Town Board and the Town Defendants possessed no power whatsoever to grant waivers or variances from the requirements of the Town Zoning Code, as a matter of law.

170.    Under the Ballston Town Code, the property upon which Vertical Bridge built its fifteen-story tower is zoned rural, and as provided within Ballston Town Code Ch. 138, the erection of cell towers is not a permitted use in the rural zoning district.

171.    As such, in order for Vertical Bridge to construct its tower on the site, Vertical Bridge was required to obtain a use variance from the Town of Ballston Zoning Board of Appeals, which, under New York State law, possesses the exclusive authority to grant same.

172.    No application for any such use variance was ever filed with, or approved by the ZBA.

173.    Under Ch. 138 of the Code, no structure, which would include a cell tower, can be at a height greater than 40 feet in the rural zoning district.

174.    This means that to construct Vertical Bridge's cell tower at the height constructed, Vertical Bridge was required to obtain a height (area) variance to exceed the maximum permitted height by three hundred and seventy-five (375%) percent, and the ZBA is the only authority under New York State law which possesses the legal authority to grant such variance.

175.    No application for any such height/area variance was ever filed with, or approved by the ZBA.

176.    Ballston Town Code 113 requires that towers be setback at a distance equal to at least 50% of the height of the tower from any adjoining lot line.

177.    This means that to construct Vertical Bridge's tower, Vertical Bridge was required to obtain a setback (area) variance to reduce the minimum required setback under the Code from seventy-five (75) feet to forty-five (45) feet, in order to comply with the setback requirements on a parcel sized 80x80.

178.    Vertical Bridge was required to lease a lot size large enough to provide for the necessary setback requirement of at least 75 feet or obtain a variance to build on a smaller lot size to encompass a smaller setback.

179.    No application for any such area variance was ever filed with, or approved by the ZBA.

180.    Under New York State law, only the Zoning Board of Appeals has the legal authority to grant the aforementioned use and area variances, without which Vertical Bridge's tower cannot have been lawfully built.

181.    Acting entirely naked of any statutory or other authority to do so, the Town Defendants purported to grant blanket approval for the construction of Vertical Bridge's tower, thereby effectively granting Vertical Bridge a waiver from the requirements for the height variance, area variance, and use variance.

182.    Under the circumstances, the actions of the Town Defendants and the Town Board constitute *ultra vires* actions.

183.    Accordingly, the Town Board exceeded its jurisdiction when it effectively granted a use variance, area variances, and/or waivers from the requirements of the Town Code for Vertical Bridge's application to construct a telecommunications tower at 323 Charlton Road, an impermissible zone for a tower under Town Code §138, and the Court should annul the action taken by the Town Board.

184.    As parties who are directly and adversely impacted by such *ultra vires* acts, the Plaintiffs are entitled to a declaratory judgment pursuant to CPLR §3001, adjudging and declaring the approval of Vertical Bridge's tower on February 13, 2024, null and void, *ab initio*.

185.    Accordingly, this Court should issue a declaratory judgment pursuant to CPLR § 3001, adjudging and declaring that: (a) the Town Board and the Town Board Defendants were without the power or any legal authority to conduct a *Monroe* balancing test, (b)  the Town Board and the Town Board Defendants were without the power or authority to grant waivers or variances from the requirements of the Town Zoning Code, (c) any acts on the part of the Town Board and/or Town Board Defendants purporting to grant approval for the building of the tower without Vertical Bridge having first obtained variances from the ZBA, were *ultra vires*, void *ab initio*, and are of no effect, and (d) Defendant Vertical Bridge cannot lawfully maintain its tower without applying

for and obtaining the necessary zoning approvals and/or variances from the Zoning Board of Appeals, in the manner required under both New York State law, and the Town's zoning code.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all the issues a jury may properly decide and for all of the requested relief that a jury may award.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs pray for relief and request that the Court render judgment as follows:

### COUNT I

### 42 U.S.C. §1983
### First Amendment Claims

(a)    A declaratory judgment adjudging and declaring the actions of the Defendants Vertical Bridge, the Town of Ballston, Verizon Wireless, Eric Connolly, Michael Carota, Chuck Curtiss, Rob Fendrick and Kelly Jasinski described herein as being unconstitutional and an Order granting injunctive relief ordering the demolition of the Tower for which they purported to grant approval, absent Defendant Vertical Bridge applying to the Zoning Board of Appeals for the required variances described herein, and absent the Zoning Board of Appeals granting same;

(b)    An award of compensatory damages in the amount of three (3) million dollars, or in such greater or other amounts as is proven at the time of trial herein, and a judgment for same against the Defendants Vertical Bridge, Verizon Wireless, the Town of Ballston, Eric Connolly, Michael Carota, Chuck Curtiss, Rob Fendrick and Kelly Jasinski, jointly and severally, and in favor of the Plaintiffs, for actual damages, statutory damages, fees, and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. §1983 and §1988 together with interest at the legal rate of nine percent (9%) per annum;

(c)    An award of punitive damages, and a judgment for same, against Defendants Vertical Bridge, Verizon Wireless, Eric Connolly, Michael Carota, Chuck Curtiss, Rob Fendrick, and Kelly Jasinski, jointly and severally, and in favor of the Plaintiffs;

(d)    A monetary award and judgment for same against the Town of Ballston, Vertical Bridge, Verizon Wireless, Eric Connolly, Michael Carota, Chuck Curtiss, Rob Fendrick, and Kelly Jasinski, jointly and severally for fees, and the costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. §1983 and §1988 together with interest at the legal rate of nine percent (9%) per annum; and

(e)    Such other and further relief as the Court deems just and proper.

## COUNT II

### 42 U.S.C. §1983
### Conspiracy to Violate Civil Rights

(a)    A declaratory judgment adjudging and declaring the actions of the Defendants Vertical Bridge, Verizon Wireless, The Town of Ballston, Eric Connolly, Michael Carota, Chuck Curtiss, Rob Fendrick, and Kelly Jasinski described herein as being unconstitutional and granting injunctive relief to order the demolition of the Tower for which they purported to grant approval;

(b)    An award of compensatory damages in the amount of three (3) million dollars, or in such greater or other amount as is proven at the time of trial herein, and a judgment for same against the Defendants Vertical Bridge, Verizon Wireless, Town of Ballston, Eric Connolly, Michael Carota, Chuck Curtiss, Rob Fendrick, and Kelly Jasinski, jointly and severally, and in favor of the Plaintiffs, for actual damages, pursuant to 42 U.S.C. §1983 together with interest at the legal rate of nine percent (9%) per annum; and

(c)    An award of punitive damages and a judgment for same against Defendants Vertical Bridge, Verizon Wireless, Eric Connolly, Michael Carota, Chuck Curtiss, Rob Fendrick, and Kelly Jasinski jointly and severally, and in favor of the Plaintiffs.

(c)    A monetary award and judgment for same against Vertical Bridge, Verizon Wireless, the Town of Ballston, Eric Connolly, Michael Carota, Chuck Curtiss, Rob Fendrick, and Kelly Jasinski, jointly and severally for fees, and the costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. §1983 and §1988 together with interest at the legal rate of nine percent (9%) per annum; and

(d)    Such other and further relief as the Court deems just and proper.

## COUNT III

### State Law Claim
### CPLR §3001

(a)    A declaratory judgment be granted pursuant to NY CPLR 3001, reversing, annulling, vacating, and/or setting aside the Decision and Resolution of the Town Board Defendants, which approved the construction of Vertical Bridge's tower, without requiring variances from the ZBA and declaring the purported approval by the Town Defendants illegal, *ultra vires*, ineffective and void *ab initio;* and

(b)    granting such other and further relief as this Court may deem just, proper, and equitable.

Dated: Merrick, New York
February 26, 2025

Respectfully submitted,

Campanelli & Associates, P.C.

By:   /s/ Andrew J. Campanelli
Andrew J. Campanelli, Esq.
1757 Merrick Avenue, Suite 204
Merrick, New York 11566
(516) 746-1600
ajc@campanellipc.com
*Attorneys for Plaintiffs*