**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DANIEL LECLAIRE; MARIA LECLAIRE; ALFRED
BROOMHEAD; MARYANN BROOMHEAD; KATIE
CALHOUN; FRED COMO; NANCY COMO; TERRI
COTONE; CAROL CYRUS; DUANE CYRUS; EMILY
FLORES; JORGE FLORES; DAVID GEHRS; MARCI
GENTILE; CARMINE GRIPPO; LORI GRIPPO; DAVID
HALM; JOLIE HALM; FRANCES MAHER; DANE
MELLON; MELINDA MELLON; BOB MESTEMAKER;
CONNIE MESTEMAKER; GLENN NELSON; KARALEE
NELSON; ANN ORLANDO; DAVID ORLANDO;
CHRISSIE ORMSBEE; JEFF ORMSBEE; KIMBERLY
SHELL; and MATTHEW SHELL,

                         Plaintiffs,             1:25-cv-00255 (AMN/DJS)

v.

VERTICAL BRIDGE DEVELOPMENT, LLC; VERTICAL
BRIDGE II, LLC; THE TOWN OF BALLSTON; ERIC
CONNOLLY, individually; MICHAEL CAROTA,
individually; CHUCK CURTISS, individually; ROB
FENDRICK, individually; KELLY JASINSKI, individually;
and CELLCO PARTNERSHIP d/b/a VERIZON
WIRELESS,

                         Defendants.

---

**APPEARANCES:**                         **OF COUNSEL:**

**Campanelli & Associates, P.C.**     **ANDREW J. CAMPANELLI, ESQ.**
1757 Merrick Avenue
Suite 204
Merric, NY 11566
*Attorneys for Plaintiffs*

**K&L Gates LLP**                **NEIL CONNER SCOTT, ESQ.**
210 Sixth Avenue               **DAVID R. OSIPOVICH, ESQ.**
Pittsburgh, PA 15222           **JESSICA MORAN, ESQ.**
                                  **LUCIANA R. LIDDELL, ESQ.**

1

*Attorneys for Defendants Vertical Bridge*          **NICHOLAS CHAN, ESQ.**
*Development, LLC and Vertical Bridge II, LLC*

**Sokoloff Stern LLP**                               **BRIAN S. SOKOLOFF, ESQ.**
179 Westbury Avenue
Carle Place, NY 11514
*Attorneys for Defendants The Town of Ballston,*
*Eric Connolly, Michael Carota, Chuck Curtiss,*
*Rob Fendrick, and Kelly Jasinski*

**Young/Sommer LLC**                                 **DAVID C. BRENNAN, ESQ.**
500 Federal Street – 5th Floor
Troy, NY 12180
*Attorneys for Defendant Cellco Partnership*
*d/b/a Verizon Wireless*

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.     INTRODUCTION

On February 26, 2025, plaintiffs Daniel LeClaire, Maria LeClaire, Alfred Broomhead, Maryann Broomhead, Katie Calhoun, Fred Como, Nancy Como, Terri Cotone, Carol Cyrus, Duane Cyrus, Emily Flores, Jorge Flores, David Gehrs, Marci Gentile, Carmine Grippo, Lor Grippo, Davis Halm, Jolie Halm, Frances Maher, Dane Mellon, Melinda Mellon, Bob Mestemaker, Connie Mestemaker, Glenn Nelson, Karalee Nelson, Ann Orlando, David Orlando, Chrissie Ormsbee, Jeff Ormsbee, Kimberly Shell, and Matthew Shell (collectively, "Plaintiffs") commenced this action seeking compensatory and declaratory relief pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and NY CPLR § 3001 against multiple defendants: Vertical Bridge Development, LLC and Vertical Bridge II, LLC (together, "Vertical Bridge"); The Town of Ballston ("Ballston"), Ballston Supervisor Eric Connolly ("Connolly") in his individual capacity, and Ballston Town Board Members Michael Carota ("Carota"), Chuck Curtiss ("Curtiss"), Rob Fendrick ("Fendrick"), and

Kelly Jasinski ("Jasinski") in their individual capacities (collectively as individuals, "Individual Defendants") (collectively with Ballston, "Town Defendants"); and Cellco Partnership doing business as Verizon Wireless ("Verizon"). *See* Dkt. No. 1 ("Complaint"). Plaintiffs allege that all defendants ("Defendants") conspired and acted to deny Plaintiffs their First Amendment rights regarding the approval and construction of a cell signal tower. See *id.* at ¶¶ 9, 18-19.

Presently before the Court are three motions to dismiss brought by Vertical Bridge, the Town Defendants, and Verizon, respectively. *See* Dkt. Nos. 39, 40, 42. Plaintiffs responded to all of the motions in a single brief, Dkt. No. 47, and each set of defendants replied, Dkt Nos. 48, 49, 50. For the reasons that follow, the Court grants each of the Defendants' motions.

## II.    BACKGROUND

### A. The Parties

Plaintiffs are individual property owners and residents in Burnt Hills, which is a hamlet within the Town of Ballston, New York. Dkt. No. 1 at ¶¶ 26-56. Plaintiffs' properties are located within 225 to 1,475 feet of the cell tower at 323 Charlton Road, Ballston Spa, New York. *See id.* Each Plaintiff states that the tower is visible from his or her property. *See generally* Dkt. No. 1-7 (adverse impact statements).

Vertical Bridge comprises two limited liability telecommunications infrastructure companies organized under Delaware law and authorized to do business in New York. *Id.* at ¶¶ 57-58; Dkt. No. 42 at 2. Verizon is a limited partnership organized under New York law with its principal place of business in New Jersey. *Id.* at ¶ 66. Ballston is a municipal corporation organized under New York law with its principal place of business in New York. *Id.* at ¶ 59. At all relevant times, Defendant Connolly was the Ballston Town Supervisor. *Id.* at ¶ 60. At all

relevant times, Defendants Carota, Curtiss, Fendrick, and Jasinski were members of the Ballston

Town Board. *Id.* at ¶¶ 61-64.

### B. Legal Background

Under New York law, towns that enact zoning laws must appoint a zoning board of appeals

("ZBA") that has the authority to grant use and area variances allowing applicants to depart from

a local zoning law. *See* New York Town Law § 267(2) (McKinney 2006); New York Town Law

§ 267-b (McKinney 1993). ZBA meetings must be public and hearings on appeal of zoning

enforcement must be publicly noticed in a newspaper at least five days in advance. New York

Town Law § 267-a(1), (7) (McKinney 2002).

In *Matter of Cnty. of Monroe (City of Rochester)*, the New York Court of Appeals adopted

a "balancing of public interests" test (the *"Monroe* test") to determine the applicability of local

zoning laws when two governmental entities are in conflict. 72 N.Y.2d 338, 341 (N.Y. 1988).[1]

The next year, the New York Appellate Division, Fourth Department, applied the *Monroe* test to

conclude that a town could immunize itself from its own zoning laws. *Armenia v. Luther*, 152

A.D.2d 928 (N.Y. App. Div. 1989). In *Matter of Crown Comm'n N.Y., Inc. v. Dep't of Trans. of*

*State of N.Y.*, the Court of Appeals expanded the applicability of *Monroe* to include a zoning

conflict between the private licensees of a state project and a town. 4 N.Y.3d 159, 166 (N.Y. 2005).

New York state trial courts have also held that a town board has the authority to apply the *Monroe*

---

[1] The Court of Appeals articulated nine relevant factors: (1) the nature and scope of the instrumentality seeking immunity, (2) the kind of function or land use involved, (3) the extent of the public interest to be served thereby, (4) the effect local land use regulation would have upon the enterprise concerned, (5) the impact upon legitimate local interests, (6) the applicant's legislative grant of authority, (7) alternative locations for the facility in less restrictive zoning areas (8) alternative methods of providing the needed improvement, and (9) intergovernmental participation in the project development process and an opportunity to be heard. *Monroe*, 72 N.Y.2d at 343 (citations and quotations marks omitted).

balancing test. *See Bruenn v. Town Bd. of Town of Kent*, 997 N.Y.S.2d 668, 2014 WL 3671324, at *1-2 (N.Y. Sup. Ct. June 13, 2014) (holding that a Town Board has the power to "employ the 'immunity balancing test' of *Matter of Monroe*, [] to determine whether, in the first instance, an entity should be granted immunity from local zoning requirements"); *Nanuet Fire Engine Co. No. 1 v. Amster*, 676 N.Y.S.2d 890, 894 (N.Y. Sup. Ct. 1998) ("It is for the Town of Clarkstown, in the first instance, to determine after an opportunity to be heard is afforded other intergovernmental agencies and legitimate local interests, to apply the balancing test set forth in *County of Monroe*.").

### C. Factual Background

In September 2024, Vertical Bridge constructed a 150-foot cell tower in the Town of Ballston, New York. *See* Dkt. No. 1-7 at 12.[2] With the Town Board's approval, Vertical Bridge sited the tower on town-owned land shared with the municipal Town Hall building. *See* Dkt. No. 1-8 at 2; Dkt No. 1 at ¶ 92. Plaintiffs allege that the cell tower site was zoned rural and residential, which prohibits cell towers according to Ballston Code § 138-18. Dkt. No. 1 at ¶ 96.

Key events leading up to the Town Board's approval of the cell tower construction are matters of public record, which Plaintiffs incorporate by reference, and the Court considers integral to the Complaint for the purposes of these motions. *See* Dkt. No. 1 at ¶ 88; Dkt. Nos. 40-2, 40-4, 40-5, 40-6, 40-7; *see also Bloomingburg Jewish Educ. Center v. Village of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 472 (S.D.N.Y. 2015) (considering public records from town planning board meeting on motion to dismiss). In August 2022, October 2022, and January 2023, the Ballston Town Board held publicly-noticed Town Board meetings during which members discussed various aspects of the Vertical Bridge cell tower project. *See* Dkt. No. 40-2 at 2; Dkt. No. 20-4 at 3-6; Dkt.

---

[2] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system.

No. 40-5 at 3.  Each of these meetings included opportunities for public comment, and at each of these meetings, no one from the public spoke or submitted written correspondence regarding the cell tower.  *See* Dkt. No. 40-2 at 3; Dkt. No. 40-4 at 4; Dkt. No. 40-5 at 11.

On October 30, 2023, Vertical Bridge's attorney Jacquie Phillips Murray sent a letter to the Ballston Town Board requesting that they consider granting zoning immunity to Vertical Bridge's proposed cell tower under the *Monroe* test.  Dkt. No. 1-8 at 2.  The letter also requested that the Town Board add the matter to its November 14, 2023 meeting agenda, *id.* at 3, which it did, *see* Dkt. No. 40-6 at 2-3.  At that meeting, Attorney Murray further explained Vertical Bridge and Verizon's request that the Town Board consider applying the *Monroe* test.  Dkt. No. 40-6 at 2; Dkt. No. 1 at ¶ 86.  Plaintiffs allege that Attorney Murray "explicitly stated that they were asking the Board to perform a *Monroe* balancing test to avoid the required approvals of three boards whose approvals would be required for Vertical Bridge to build its tower, one of which the attorney specifically named was 'the ZBA.'"  Dkt. No. 1 at ¶ 87.

On February 13, 2024, the Ballston Town Board held a publicly noticed meeting in which it resolved, among other things, that the *Monroe* factors weighed in favor of granting zoning immunity to the Vertical Bridge cell tower and subsequently resolved that the project was so immune.  Dkt. No. 40-7 at 14-18.  There was opportunity for public comment at the meeting, and no one spoke regarding the cell tower.  *Id.* at 8, 19.  As part of its resolution, the Town Board noted that the Town "mailed Agricultural Data Statements to each property owner within 500 feet of the proposed tower installation" and that there had been "no response from these property owners in opposition to the application."  Dkt. No. 40-7 at 15.

### D. Plaintiffs' Claims

Plaintiffs assert three causes of action. First, Plaintiffs allege that all Defendants violated Plaintiffs' First Amendment right to petition the government for a redress of grievances through action constituting an impermissible prior restraint. Dkt. No. 1 at ¶¶ 109-32. Specifically, Plaintiffs allege that Defendants unlawfully conducted a *Monroe* test for the cell tower, thereby precluding a ZBA hearing during which Plaintiffs could express their opposition. *See id.* at ¶¶ 84-85, 113. Second, Plaintiffs allege that all Defendants conspired to deprive Plaintiffs of their aforementioned rights. *Id.* at ¶¶ 133-56. Third, Plaintiffs assert state law claims pursuant to New York Civil Practice Law and Rules § 3001, alleging that the Town Defendants acted beyond their jurisdictional authority by effectively granting zoning waivers to the Vertical Bridge cell tower project, a power reserved by state statute to the ZBA. *Id.* at ¶¶ 157-61, 169-85. Consequently, Plaintiffs also allege that the resulting lack of a ZBA hearing violated New York State Town Law, and that the construction of the tower violated the Town of Ballston's Zoning Code. *Id.* at ¶¶ 162-63. Plaintiffs allege that in addition to the violation of their rights, Plaintiffs have suffered aesthetic injuries, reduced home values, and an increased risk of "structural failures, ice fall, and debris fall" from the cell tower. *Id.* at ¶ 164.

### III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court's review of a

motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers*, 282 F.3d at 152-53).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555, and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## IV. DISCUSSION

### A. Federal Claims Against the Individual Defendants, Vertical Bridge, and Verizon

Plaintiffs assert their claims pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of their rights under the First and Fourteenth Amendments of the United States Constitution. Dkt. No. 1 at ¶ 22. To bring an action under Section 1983, a plaintiff's well-pled complaint must contain two elements: "(1) the conduct complained of must have been committed

by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). The Court first addresses whether Plaintiffs may properly assert claims pursuant to Section 1983 against the Individual Defendants, Vertical Bridge, and Verizon. *See, e.g.*, *Romano v. Elite Towers, L.P.*, No. 24-CV-08910 (OEM) (ST), 2026 WL 546404, at *3 (E.D.N.Y. Feb. 26, 2026) (addressing first, in case with nearly identical legal questions, whether certain defendants were properly sued pursuant to [Section] 1983).

### 1.  Qualified Immunity as to the Individual Defendants

The Town Defendants assert that the Individual Defendants are entitled to qualified immunity. Dkt. No. 41 at 31-33. Plaintiffs do not address the Town Defendants' arguments on this point, *see generally* Dkt. No. 47, and the Court considers Plaintiffs to have conceded the issue, *see, e.g.*, *Romano*, 2026 WL 546404, at *3 (citing *Francisco v. Abengoa, S.A.*, 559 F. Supp. 286, 318 n.10 (S.D.N.Y. 2021)). But even if Plaintiffs had not conceded on the issue of qualified immunity, the Court finds that Plaintiffs have not adequately pled a clearly established constitutional violation and that Defendants have met their burden.

The doctrine of qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Courts must apply "a two-step analysis to determine whether qualified immunity bars a plaintiff's claim against government officials for civil damages related to actions taken in the course of their official duties." *Sabir v. Williams*, 52 F.4th 810, 817 (2d Cir. 2022), *cert. dismissed,* 143 S. Ct. 2694 (2023) (citing *Francis v. Fiacco,*

942 F.3d 126, 139 (2d Cir. 2019)). "Pursuant to that analysis, qualified immunity shields federal and state officials from money damages unless the plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (internal quotation marks omitted).

In assessing whether the right was clearly established, courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011). The determining question is "whether the violative nature of *particular* conduct is clearly established," *id.* (emphasis added), and the analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition[,]" *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (*per curiam*) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). Qualified immunity is an affirmative defense; therefore, the defendant bears the burden of proving that qualified immunity applies. *See Coolick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012). The defense of qualified immunity may properly be raised at the motion to dismiss stage because "[q]ualified immunity provides government officials 'immunity from suit rather than a mere defense to liability.'" *Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012) (quoting *Pearson*, 555 U.S. at 231).

Here, Plaintiffs have not pled that the Individual Defendants violated a statutory or constitutional right that is "beyond debate;" the Town Defendants make several well-supported arguments as to why the Town Board's action was constitutional. *See* Dkt. No. 41 at 23-27; *see also infra* Section IV.B.1-2. Thus, the Individual Defendants did not violate a "clearly established" right by adopting the resolution granting zoning immunity. Accordingly, the Individual Defendants are entitled to qualified immunity and Plaintiffs' claims against them are dismissed. *See, e.g.*, *Romano*, 2026 WL 546404, at *4.

10

## 2.    Liability as to Vertical Bridge and Verizon

Plaintiffs allege that Vertical Bridge and Verizon violated Plaintiffs' First Amendment rights by "inducing" the Town Defendants to conduct a *Monroe* balancing test that circumvented a public hearing before the ZBA.  Dkt. No. 1 at ¶¶ 84-86, 90.

"A plaintiff fails to state a claim under Section 1983 where the plaintiff does not sufficiently allege that the defendant acted under color of state law."  *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (citing *Monsky v. Moraghan,* 127 F.3d 243, 245 (2d Cir. 1997)).  Additionally, because the First Amendment constrains the government and not private parties, "a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"  *Romano*, 2026 WL 546404, at *4 (citing *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)).

Vertical Bridge and Verizon argue that Plaintiffs fail to adequately allege that they acted under color of state law.  Dkt. No. 42 at 10-11; Dkt. No. 39 at 6-8.  The Court agrees.  First, as Plaintiffs acknowledge, Vertical Bridge and Verizon are private entities and not state actors.  *See* Dkt. No. 1 at ¶ 135.  Second, Plaintiffs fail to plausibly allege any facts allowing for an inference that Vertical Bridge and Verizon were private entities acting under color of state law.  A private entity acts under color of state law for the purposes of Section 1983 when (1) "the entity acts pursuant to the coercive power of the state or is controlled by the state"; (2) "the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the [s]tate, or the entity's functions are entwined with state policies"; or (3) "the entity has been delegated a public function by the [s]tate[.]"  *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (citation and internal quotations omitted).  Here, Plaintiffs do not allege that the Town Defendants coerced, controlled, or encouraged Vertical Bridge or Verizon,

11

that the Town Defendants delegated any public function to Vertical Bridge or Verizon, or that Vertical Bridge or Verizon's functions were entwined with Ballston's policies. *See generally* Dkt. No. 1. In fact, Plaintiffs allege the reverse: that Vertical Bridge and Verizon petitioned the Town Defendants to consider and apply the *Monroe* test. *Id.* at ¶86. Such a request does not impute the power of the state to the private entity. *See Romano*, 2026 WL 546404, at *5 (Verizon . . . requesting the Town Board to apply the [*Monroe*] test is no different from Plaintiffs petitioning the Town Board[.]").

To the extent that Plaintiff alleges that Vertical Bridge and Verizon were willful participants in joint activity with the Town Defendants in relation to Plaintiffs' claim for conspiracy pursuant to Section 1983, the Court remains unconvinced that Plaintiffs have plausibly alleged that they acted under color of state law. *See* Dkt. No. 1 at ¶ 135; *see also id.* at 39. To state a claim for conspiracy under Section 1983, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Additionally, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003). The Second Circuit has stated that while conclusory allegations of a conspiracy are insufficient, "'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn* 200 F.3d at 72 (quoting *Rounseville v. Zahl*, 13 F.3d 625m 632 (2d Cir. 1994)). Nevertheless, "[a]llegations of conspiracy must 'allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy.'" *Mitchell v. Cnty. of*

12

*Nassau*, 786 F. Supp. 2d 545, 565 (E.D.N.Y. 2011) (quoting *Fariello v. Rodriguez*, 148 F.R.D. 670, 677 (E.D.N.Y. 1993) *aff'd*, 22 F.3d 1090 (2d Cir. 1994)).

Here, while Ballston is indeed a state actor and Vertical Bridge and Verizon are private parties, Plaintiff fails to plausibly allege facts describing any agreement to violate constitutional rights.   Plaintiffs merely allege that Vertical Bridge and Verizon acted "in furtherance of the conspiracy by explicitly requesting of the Town Defendants that they conduct a *Monroe* balancing test for the specifically stated purpose of circumventing the ZBA and the State-mandated requirements[.]" Dkt. No. 1 at ¶ 137.   Plaintiffs then allege that the Town Defendants "took affirmative acts in furtherance of the conspiracy by explicitly purporting to approve Vertical Bridge's tower, thereby effectively granting Vertical Bridge variances and/or waivers of such variance requirements for the specifically stated purpose of circumventing the ZBA and the State-mandated requirements.  *Id.* at ¶ 138.

These conclusory allegations do not describe an agreement or a conspiracy.   At most, Plaintiffs merely describe a lawful lobbying effort.   As the Complaint states, Vertical Bridge "*simply advised* the Ballston Town Board that they could circumvent the ZBA entirely (and lobbied that they do so) by conducting a purported *Monroe* balancing test."   Dkt. No. 1 at ¶ 129. Additionally, Defendants allegedly engaged in all these actions at Town Board meetings that were open to the public, which further renders the conspiracy allegations implausible.  *See* Dkt No. 1 at ¶ 88.

Plaintiffs further allege: "Upon information and belief, Defendants agreed to bypass the ZBA, because all of the Defendants knew that the public, and those most greatly affected (which included the Plaintiffs herein), would oppose such variance applications."   Dkt. No. 1 at ¶ 152. And: "Upon information and belief, in exchange for agreeing to circumvent the ZBA, defendant

Vertical Bridge agreed to provide the Town with money, perks, and/or gifts." *Id.* at ¶ 153; *see also id.* at ¶ 90. Plaintiffs do not, however, include any factual allegations showing that these are anything more than formulaic allegations of conspiracy. Plaintiffs merely state that "[c]onspiracies of this precise nature are part of a disturbing trend taking place across New York State" and cite Attorney Murray's October 20, 2023 letter to the Ballston Town Board, which contains no reference to any knowledge of public opposition, nor any offer of money, perks, or gifts. Dkt. No. 1 at ¶¶ 141-42; Dkt. No. 1-8. The public meeting minutes of the Ballston Town Board also fail to support the plausibility of these allegations. *See* Dkt. Nos. 40-2, 40-4, 40-5, 40-6, 40-7. Therefore, the Court finds that Plaintiffs have not plausibly alleged that Vertical Bridge and Verizon acted under color of state law, or engaged in a conspiracy with the Town Defendants, and dismisses the federal claims against them.

## B. Federal Claims against Ballston

The Court next considers whether Plaintiffs plausibly allege that remaining Defendant Ballston deprived Plaintiffs of their First Amendment rights.

### 1. First Amendment Right to Petition

Plaintiffs allege that Ballston deprived Plaintiffs of their First Amendment right to petition the government by not holding a state law-mandated ZBA hearing in relation to the siting of the cell tower. *See* Dkt. No. 1 at ¶¶ 110-118. In support of their claim, Plaintiffs argue that the opportunity to petition a local ZBA is constitutionally required. *See id.* In its Motion, Ballston argues that the Court should dismiss this claim because Plaintiffs had both notice and opportunity to petition the government at multiple public hearings regarding the cell tower but did not. Dkt. No. 41 at 15-16. Additionally, Ballston asserts that Plaintiffs fail to allege a cognizable deprivation

14

because the failure to hold a hearing does not constitute a deprivation of the right to petition the government. *Id.* at 16.

The Court agrees with Ballston. Nothing in our First Amendment jurisprudence supports Plaintiff's theory regarding the violation of their right to petition the government for a redress of grievances. To be sure, the right to petition for a redress of grievances is "among the most precious liberties safeguarded by the Bill of Rights." *United Mine Workers, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). However, "[t]he Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283 (1984). "Nothing in the First Amendment or in [the Supreme Court's] case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Id.* at 285. Additionally, courts have held that

> [t]he right to petition government afforded by the First Amendment does not include the absolute right to speak in person to officials. Where written communications are considered by government officials, denial of a hearing does not infringe upon the right to petition. The right to petition government does not create in the government a corresponding duty to act.

*Piscottano v. Town of Somers*, 396 F. Supp. 2d 187, 206 (D. Conn. 2005) (quoting *Cronin v. Town of Amesbury*, 895 F. Supp. 375, 389 (D. Mass. 1995), *aff'd*, 81 F.3d 257 (1st Cir. 1996)).

Plaintiffs' argument therefore fails for multiple reasons. First, failing to hold a ZBA hearing did not deprive Plaintiffs of their right to petition the government. To the contrary, the public record indicates that Plaintiffs had multiple, duly noticed opportunities to voice their opposition to the site of the cell tower. The Town Defendants held a public hearing on the matter of a lease option for the purpose of constructing the Vertical Bridge cell tower on Aug. 9, 2022. Dkt. 40-2. Members of the Town Board also discussed the cell tower and the *Monroe* factors in

publicly-noticed Town Board meetings at which town residents had the opportunity to speak.  *See generally* Dkt. Nos. 40-2, 40-4, 40-5, 40-6, 40-7.  Furthermore, at all relevant times, Ballston maintained Plaintiffs' right to express opposition to (or support for) the tower in writing.  *See, e.g.*, Dkt. No. 40-2 at 3 (stating on the record that the Town Board received no correspondence either at or prior to the public hearing on the matter of the lease option for the cell tower); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 375 (N.D.N.Y. 2003) (holding that plaintiff was not denied the right to petition the government because "defendants afforded plaintiff the opportunity to submit her grievances in writing").

Second, for First Amendment purposes, whether state law requires a ZBA hearing is irrelevant because the constitutional right to petition the government does not necessarily encompass all state statutory rights.  "However wise or practicable various levels of public participation in various kinds of policy decisions may be, [the Supreme Court] has never held, and nothing in the Constitution suggests it should hold, that government must provide for such participation." *Knight*, 465 U.S. at 285.  That New York may have provided for public hearings in the context of zoning variances thus does not bear on whether Plaintiffs were deprived of their First Amendment rights due to a limit on those hearings.

Third, Plaintiffs do not plausibly allege any facts showing that Ballston attempted to suppress, exclude, or censor any speaker or speech at the Town Board's publicly-noticed meetings. *See* Dkt. No. 1 at ¶¶ 81-92, 109-17.  Therefore, Plaintiffs do not plausibly allege that Ballston violated their right to petition.

### 2.  Prior Restraint on Speech

"A 'prior restraint' on speech is a law, regulation or judicial order that suppresses speech— or provides for its suppression at the discretion of government officials—on the basis of the

speech's content and in advance of its actual expression. . . . It has long been established that such restraints constitute 'the most serious and the least tolerable infringement' on our freedoms of speech and press." *United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005) (citation omitted). Prior restraints are not per se unconstitutional, but the Supreme Court has held that such restraints bear a heavy presumption against their validity. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975). "Government action constitutes a prior restraint when it is directed to suppressing speech because of its content before the speech is communicated." *In re G. & A. Books, Inc.*, 770 F.2d 288, 296 (2d Cir. 1985).

Plaintiffs do not specify whether their prior restraint challenge to Ballston's action is facial or as-applied, but "the label is not what matters." *Brokamp v. James*, 573 F. Supp. 3d 696, 704 n. 3 (N.D.N.Y. 2021) (citation omitted). "A claim is facial if it challenges application of the law more broadly, but a claim is as-applied if it is limited to a plaintiff's particular case." *Id.* (citation and internal quotations omitted). Plaintiffs allege that Ballston's application of the *Monroe* test constitutes an impermissible prior restraint on Plaintiff's speech because, as a result, no ZBA hearing was held. Dkt. No. 1 at ¶¶ 118-19. Plaintiffs argue that whenever a town board applies the *Monroe* test to grant zoning immunity instead of a ZBA, such action is a prior restraint, s*ee* Dkt. No. 47 at 21, and, as such, the Court interprets their challenge as a facial challenge.

The Second Circuit has delineated two traditional types of government action that are susceptible to a facial challenge presuming an unconstitutional prior restraint: (1) "preventing the printed publication of disfavored information," and (2) "a facially-neutral law that sets up an administrative apparatus with the power and discretion to weed out disfavored expression before it occurs[.]" *Citizens United v. Schneiderman*, 882 F.3d 374, 386-87 (2d Cir. 2018) (internal citations omitted). Because the *Monroe* test is clearly not an outright content-based ban, the Court

17

considers whether the *Monroe* test resembles an impermissible administrative apparatus with too much power and discretion.

Assuming that it has the authority to apply the *Monroe* test, a town board does not exercise unbridled discretion when granting zoning immunity under that test. Rather, the *Monroe* balancing test is exactly that: a *test* in which nine enumerated factors are weighed for or against the application of zoning laws. *See Monroe*, 72 N.Y.2d at 343. The test therefore does not, as an action constituting an unconstitutional prior restraint would require, give a Town Board the plenary power to restrict speech based on its own discretion. Rather, a Town Board must weigh the factors and support its determinations with evidence. *See Bruenn*, WL 3671324, at *4-5 (finding that Town Board's grant of zoning immunity after applying *Monroe* was not arbitrary or capricious because it supported its determinations with substantial evidence). Thus, on its face, the application of the *Monroe* test does not constitute a prior restraint.

Moreover, the Court finds that even if application of the *Monroe* test could operate as a prior restraint as-applied, Plaintiffs have not plausibly alleged that Ballston applied the *Monroe* test for the improper purpose of stifling Plaintiffs' speech. In conclusory fashion, Plaintiffs allege that the Town Defendants "intentionally and deliberately" circumvented the ZBA "for the intended purpose of depriving property owners of their right to be heard before a designated public forum." Dkt. No. 1 at ¶¶ 15, 17. However, Plaintiffs do not plausibly allege any facts regarding any Defendant's intent or suggesting that any Defendant knew or would have had reason to know of any Plaintiff's opposition to the siting of the tower at the time they applied the *Monroe* test. *See, e.g.*, Dkt. No. 1 at ¶ 118.

In sum, Plaintiffs have not plausibly alleged any First Amendment violation, and, accordingly, the Court dismisses Plaintiffs' First Amendment claim.

### 3. Conspiracy to Deprive Plaintiffs of Their First Amendment Rights

Plaintiffs bring one more federal claim pursuant to Section 1983: that all Defendants conspired to deprive Plaintiffs of their First Amendment rights. Dkt. No. 1 at ¶¶ 133-156. However, "[t]o allege a Section 1983 conspiracy claim, a constitutional cause of action must be established." *Romano*, 2026 WL 546404, at *7 (citing *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009)). Because Plaintiffs have failed to plausibly allege any First Amendment violation or any agreement to infringe on their First Amendment rights, Plaintiffs' claim for conspiracy is unsustainable. *See supra* Sections IV.A.2, IV.B.1-2. Moreover, as to Plaintiff's federal claims, Ballston is the only remaining Defendant, and a single defendant cannot support a claim for conspiracy. *See Pangburn*, 200 F.3d at 72. Thus, the Court dismisses Plaintiffs' conspiracy claim. *See, e.g.*, *Romano*, 2026 WL 546404, at *7.

### C. State Law Claim

"[T]he strong preference in this Circuit is for district courts to decline to exercise supplemental jurisdiction under § 1367(c)(3) when all of the federal claims are dismissed from the suit prior to trial." *Torres v. Faxton St. Lukes Healthcare*, No. 16-cv-439, 2017 WL 11317906, at *4 (N.D.N.Y. Jan. 26, 2017) (citation omitted). After considering the relevant factors, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claim. *See Lundy v. Cath. Health Sys. of Long Island, Inc.*, 711 F.3d 106, 117-18 (2d Cir. 2013); *see also Romano*, 2026 WL 546404, at *7 ("The Court further declines to exercise supplemental jurisdiction over Plaintiffs' remaining New York state-law claims under . . . CPLR § 3001").

## V.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that each of Defendants' motions to dismiss, Dkt. Nos. 39, 40, and 42, are

**GRANTED**; and the Court further

**ORDERS** that Plaintiffs' Complaint be **DISMISSED** in its entirety; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the

Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 17, 2026
       Albany, New York

Anne M. Nardacci
U.S. District Judge

20